**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMY CARMEN,** | : | |
| | : | |
| Plaintiff, | : | **Case No. 1:25-cv-1671** |
| | : | **Judge Charles Esque Fleming** |
| v. | : | |
| | : | |
| **PENSKE MEDIA CORPORATION, *et al.*,** | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**DEFENDANTS PENSKE MEDIA CORPORATION AND ANDY GREENE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

# TABLE OF CONTENTS

**Page**


REPLY MEMORANDUM ........ 1

I. SUMMARY OF THE ARGUMENT ........ 1

II. STATEMENT OF THE ISSUES ........ 2

III. ARGUMENT ........ 2

A. Plaintiff all but ignores the Croce standard, which renders the entire Article nonactionable. ........ 4

B. The Opposition fails to adequately rebut the defense that certain Challenged Statements are substantially true based upon Plaintiff's own allegations. ........ 6

C. The Opposition fails to show the Challenged Statements are anything but nonactionable opinion. ........ 10

D. Plaintiff does not meaningfully respond to the arguments that certain Challenged Statements are not "of and concerning" Amy Carmen. ........ 11

E. Plaintiff fails to adequately respond to the arguments that certain Challenged Statements do not carry a defamatory meaning. ........ 13

F. Plaintiff defamation by omission argument is not supported by Ohio law. ........ 17

G. Plaintiff has not shown why her false light claim should avoid dismissal. ........ 18

IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chem. Soc. v. Leadscope, Inc.*,
978 N.E.2d 832 (Ohio 2012).....17

*Braun v. Ultimate Jetcharters, Inc.*,
No. 5:12CV1635, 2013 WL 623495 (N.D. Ohio Feb. 19, 2013).....10

*Brown v. VHS of Mich., Inc***.**,
545 F. App'x 368 (6th Cir. 2013).....3

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
499 F.3d 520 (6th Cir. 2007).....18

*Croce v. N.Y. Times Co.*,
345 F. Supp. 3d 961 (S.D. Ohio 2018).....3, 6

*Croce v. New York Times*,
930 F.3d 787 (6th Cir. 2019)..... *passim*

*Dickinson v. Spieldenner*,
No. CI0201404424, 2016 WL 8792226 (Ohio Com.Pl. Feb. 08, 2016).....17

*Dombrowski v. Pfister*,
380 U.S. 479 (1965).....3

*Hall v. United Labs, Inc.*
31 F. Supp.2d 1039 (N.D. Ohio 1998).....3

*Hartman v. Kerch*,
217 N.E.3d 881 (Ohio Ct. App. 2023).....10

*Hecht v. Levin*,
613 N.E.2d 585 (Ohio 1993).....17

*Jankowicz v. Fox News Network, LLC*,
No. 24-2544, 2025 WL 2630572 (3d Cir. Sept. 12, 2025).....12

*Labban v. Mahon*,
No. 21-3091, 2021 WL 6777029 (6th Cir. Sept. 23, 2021).....17

*Mahdy v. Mason City Sch. Dist.*,
No. 1:16-CV-845, 2018 WL 1327211 (S.D. Ohio Mar. 15, 2018).....19

*Miami Herald Publ'g Co. v Tornillo*,
418 U.S. 241 (1974)....................17

*Niotti-Soltesz v. Piotrowski*,
86 N.E.3d 1 (Ohio Ct. App. 2017)....................10

*Sandmann v. N.Y. Times Co.*,
78 F.4th 319 (6th Cir. 2023)....................3

*Welling v. Weinfeld*,
866 N.E.2d 1051 (Ohio 2007)....................19

*Woods v. Sharkin*,
192 N.E.3d 1174 (Ohio Ct. App. 2022)....................14, 18

# REPLY MEMORANDUM

## I. SUMMARY OF THE ARGUMENT

Plaintiff's Memorandum in Opposition to the Rolling Stone Defendants' Motion to Dismiss (the "Opposition") fails to present any meaningful argument why this Court should not dismiss all claims against the Rolling Stone Defendants.[1] Instead, Plaintiff mischaracterizes the Article by claiming that "context" gives rise to implied defamatory meanings that are nowhere in the actual text—recasting straightforward descriptions of family events and quoted opinions from others into a portrayal of her as the sole cause of Eric's estrangement. But defamation claims rise or fall on what was actually published—not on purported implications Plaintiff asks the Court to adopt.

Once Plaintiff's mischaracterizations are stripped away, her substantive responses fail across the board. First, Plaintiff does not confront *Croce v. New York Times*, which holds that an article presenting multiple viewpoints and prominently including a plaintiff's explanations and denials is nondefamatory—the structure of the Article here. Second, Plaintiff's own allegations confirm the truth of numerous Challenged Statements. Third, Plaintiff' does not explain why many Challenged Statements should not be dismissed as nonactionable opinion. Fourth, Plaintiff offers no colorable argument that several Challenged Statements are "of and concerning" her. Fifth, Plaintiff fails to identify any Challenged Statement that carries a defamatory meaning. Sixth, Plaintiff fails to rebut Ohio law barring defamation by omission and derivative false light claims.

In short, Plaintiff's Opposition fails to address the *Croce* standard that renders the entire Article nonactionable and fails to identify any Challenged Statement that meets all the basic elements of a defamation claim. For all these reasons, and for those set forth in the Rolling Stone Defendants' Motion, the Complaint should be dismissed in its entirety.

---

[1] Capitalized terms not defined herein have the meanings set forth in the Rolling Stone Defendants' Motion to Dismiss.

## II. STATEMENT OF THE ISSUES

A. **Issue 1 (Croce / Balanced Reporting):** Whether under *Croce v. New York Times*, 930 F.3d 787 (6th Cir. 2019) ("*Croce II*"), the Article is nonactionable as a matter of law because it presents competing viewpoints, attributes those viewpoints to their sources and prominently includes Plaintiff's denials and explanations.

B. **Issue 2 (Truth):** Whether Plaintiff's Complaint concedes the substantial truth of numerous Challenged Statements such that claims based on those statements must be dismissed as a matter of law.

C. **Issue 3 (Opinion vs. Fact):** Whether the Challenged Statements are nonactionable expressions of opinion rather than actionable statements of fact when viewed individually and in context.

D. **Issue 4 ("Of and Concerning"):** Whether the mere appearance of Plaintiff's name within sentences containing challenged language renders those statements "of and concerning" her where the asserted defamatory meaning does not pertain to her.

E. **Issue 5 (Defamatory Meaning):** Whether the Challenged Statements carry a defamatory meaning where Plaintiff fails to allege how they expose her to contempt, ridicule, or lowered reputation in the community.

F. **Issue 6 (Defamation by Omission):** Whether Ohio law recognizes a defamation-by-omission theory permitting liability based on information Plaintiff believes should have been included in the Article.

G. **Issue 7 (False Light):** Whether Plaintiff's false light claim fails for the same reasons her defamation claims fail.

## III. ARGUMENT

Plaintiff's Opposition either ignores or mischaracterizes the Article's text, relying on vague appeals to "context" and undefined "inferences" rather than addressing the actual statements the Rolling Stone Defendants published. Plaintiff's citation to broad legal principles—without application to the Article's words—cannot save her claims.

Before turning to the Rolling Stone Defendants' six independent grounds for dismissal, Plaintiff advances three threshold procedural arguments that each miss the mark. First, although Rule 12 requires accepting well-pleaded factual allegations as true, it does not allow Plaintiff to rewrite the Article, disregard its language, or convert baseless legal conclusions into "reasonable

inferences.” Dismissal is appropriate where, as here, the allegations and incorporated materials establish a defense as a matter of law. *See Hall v. United Labs, Inc.* 31 F. Supp.2d 1039, 1042 (N.D. Ohio 1998) (courts “need not accept as true legal conclusions or unwarranted . . . inferences”). Second, Plaintiff’s objection to the Rolling Stone Defendants’ sentence-by-sentence analysis of her multi-sentence Challenged Statements is contrary to Ohio law. Courts evaluate the specific words and phrases of each individual assertion the plaintiff challenges, to determine actionability. *See Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961, 992 (S.D. Ohio 2018) (“*Croce I*”); *Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 330–33 (6th Cir. 2023). While context is important to understand the meaning of each Challenged Statement (*see id.*), Plaintiff cannot avoid dismissal by invoking “context” at a high level without analyzing the specific assertions she claims to be defamatory. Third, courts routinely dismiss legally insufficient defamation claims at the pleading stage to avoid chilling protected expression. *See Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Plaintiff’s suggestion that the issues before the Court must be decided by a jury ignores controlling case law.

Plaintiff’s Opposition also offers no response to the Rolling Stone Defendants’ arguments relating to Challenged Statements 1a, 11a, 13b or 15a. Thus, any claims based upon these Challenged Statements are abandoned and should be dismissed as a matter of law. *See Brown v. VHS of Mich., Inc.*, 545 F. App’x 368, 372 (6th Cir. 2013) (treating issues not addressed in opposition as abandoned).

Setting these threshold issues aside, this Reply will establish Plaintiff’s failure to adequately address any of the grounds for dismissal raised in the Rolling Stone Defendants’ Motion to Dismiss (the “Motion”). **Section A (*Croce*)** establishes that Plaintiff has failed to confront *Croce v. New York Times*’s core holding—that an article presenting multiple viewpoints and prominently including the plaintiff’s own explanations is nonactionable as a matter of law. **Section B (Truth)**

confirms that Plaintiff's allegations concede the substantial truth of numerous Challenged Statements. **Section C (Opinion)** demonstrates that Plaintiff does not engage with Ohio's opinion factors, relying instead on conclusory assertions that cannot convert nonactionable opinion into fact. **Section D ("Of and Concerning")** confirms that many of the Challenged Statements are not about Plaintiff and any statements about her are nonactionable for other reasons. **Section E (Defamatory Meaning)** shows that Plaintiff has failed to identify any actionable statements that carry a defamatory sting and instead relies on purported "implications" in the Article which are nonactionable under Ohio law. **Section F (Omission)** demonstrates that Plaintiff fails to rebut authority showing Ohio does not recognize defamation by omission and **Section G (False Light)** establishes that her false light claim fails for the same reasons as her defamation claims. Taken together, Plaintiff's Opposition leaves every ground for dismissal unrebutted.

### A. Plaintiff all but ignores the *Croce* standard, which renders the entire Article nonactionable.

Plaintiff mentions *Croce*, but she does not engage with its controlling principle: an article that attributes differing viewpoints and prominently includes the plaintiff's own explanations and denials is nonactionable as a matter of law. *Croce II*, 930 F.3d at 792–94 (affirming dismissal where article attributed competing viewpoints and repeatedly included plaintiff's denials). Instead of confronting that governing precedent, Plaintiff argues the Article should not have been written at all—complaining that her "familial issues have no business being the subject of investigative journalism" and that the public's "voyeuristic interest" does not create a controversy. (Pl.'s Opp. to Defs.' Motion to Dismiss, ECF No. 21, at 18 ("**Opp. 1**")). Those policy grievances are irrelevant to *Croce* and ignore Plaintiff's own allegations that she voluntarily participated in the story, gave interviews, provided documents, and offered her own commentary which was widely quoted in the Article. (Comp., Ex. A, PAGEID ## 73, 74, 75, 76, 96, 99, 100, 102.)

Plaintiff never explains how the Article—which attributes viewpoints to their sources and repeatedly publishes Plaintiff's perspective—can reasonably be read as adopting a defamatory gist about her. The text consistently features Plaintiff's own account of events and includes quotes from friends praising her role in Eric Carmen's life: "[Amy] was really good for him . . . she's smart, and she really loved him. He was as happy as I'd seen him," and "I'd never seen him happier . . . She really grounded him." (Comp., Ex. A, PAGEID # 76.) It highlights her own description of her efforts as a stepmother—helping with homework, preparing meals, straightening Kathryn's hair before school, and decorating her bedroom for Valentine's Day. (*Id.* PAGEID # 99.) It recounts her remarks at her late husband's memorial, delivered "fighting back tears," saying she wished he were there "to see this amazing crowd of people who loved him." (*Id.* PAGEID # 103.)

On every disputed subject, the Article unmistakably signals Plaintiff's side. It notes that "Amy strongly denies," "Amy emphatically denies," and "Amy disputes" any negative characterizations, including the notion that Eric Carmen became a conspiracy theorist (which, in any event, concerns Eric Carmen and cannot support a defamation claim by Plaintiff) (*Id.* PAGEID ## 74, 75, 96.) When accused of excluding family, she responds: "We were excluded from their lives," and when a source claims she accused Fred of stealing, she answers: "This is completely inaccurate. . . I never told Eric or concluded that Fred 'was stealing from him.'" (*Id.* PAGEID ## 99, 100.) The Article even includes contemporaneous evidence she provided, such as Eric's email regarding Clayton's academics, and allows her to correct minor assertions—"I never told anyone that Eric took '400 supplements a day'"—as well as explain her decision to exclude Eric's children from his memorial: "I chose to have a beautiful but private celebration . . . I unapologetically did not invite anyone who was disparaging or hurtful to my husband." (*Id.* PAGEID # 102.)

Plaintiff's defamation theory would suppress any account or opinion that differs from her own. Yet, as this Court has made clear, "to transform personal offense, even that of a private figure, into the foundation of a defamation claim, would make it nearly impossible for journalists [to do their job]." *See Croce I*, 345 F. Supp. 3d at 991. Taken together, the Sixth Circuit and this Court's decisions in *Croce*, foreclose Plaintiff's theory in this case. Under *Croce*, an article that attributes competing viewpoints, provides context, and includes the plaintiff's denials, does not adopt a defamatory gist and is nonactionable as a matter of law. *Croce II*, 930 F.3d at 792–94. The Article does precisely that. Because Plaintiff fails to meaningfully confront this controlling precedent, her defamation and false light claims must be dismissed on this independent ground.

**B. The Opposition fails to adequately rebut the defense that certain Challenged Statements are substantially true based upon Plaintiff's own allegations.**

The Rolling Stone Defendants' Motion demonstrated that the following Challenged Statements are substantially true based upon Plaintiff's own pleadings: 1c, 1d, 2a, 2b, 3, 7a, 7b, 7c, 8, 9a, 10a, 10b, 13a, 13b, 14, 15a and 15b. Plaintiff's Opposition does not cure that defect. She offers no response at all to Challenged Statements 2a, 13a, 13b, and 15a, thereby abandoning any claims based upon those statements. Where Plaintiff does respond, she mischaracterizes the published language or contradicts her own Complaint. The chart below illustrates where the Opposition alleges falsity, but the Complaint itself confirms the statements' substantial truth:

| # | Challenged Statement | Complaint Admission |
|---|---|---|
| 1c | "Clayton knocked on the door . . . to finally reconcile their differences." | The Complaint alleges that Clayton approached the residence, that the curtains were closed, and that, in response to the visit, Amy and Eric called the police and reported a trespasser. (Comp. ¶ 100.) |
| 1d | "Carmen and Amy responded to the overture by closing the curtains, calling the police, and reporting a trespasser." | |
| 2b | "Fred blames Amy for inspiring a series of lawsuits that separated Eric from his brother, his [children]." | The Complaint alleges that Amy is involved in multiple lawsuits with Eric's family members. (Comp. ¶ 88.) |

| | | |
|---|---|---|
| 3 | "Amy is now accusing Clayton and Kathryn of once plotting their father's murder, in one of multiple lawsuits. . . ." | The Complaint alleges that Amy has accused Clayton and Kathryn of plotting their father's murder. (Comp. ¶ ¶104, 106.) |
| 7a | "The diary entry was cited as evidence that Kathryn and Clayton were 'planning Eric's murder' in a recent legal filing by Amy's attorneys." | The Complaint alleges Amy accused the children of attempting Eric's murder (¶¶ 104, 106); that she has copies of Kathryn's diary entry (¶ 64); and that Eric or his housekeepers searched Kathryn's room and the product of those searches reached Amy (¶ 106.) |
| 7b | "'Amy took multiple photos of my diary to drive a wedge into the relationship with my father,' Kathryn writes . . . ."" | |
| 7c | "'These antics started as soon as she moved into the home. She would often comb through my brother and I's rooms looking for anything that could harm a parent-child relationship.'" | |
| 8 | Eric and Amy moved to Arizona and "resisted any attempt by Clayton and Kathryn to reconnect . . . ." | The Complaint alleges that Eric and Amy moved to Arizona in 2018 and did not reconnect with Eric's children. (Comp. ¶ 74.) |
| 9a | "Carmen met Amy, and as they dated and eventually married, he slowly became estranged from his brother, his ex-wife, and both of his kids. | The Complaint alleges that after Eric and Amy met, he became estranged from his ex-wife and children. (Comp. ¶¶ 9, 51, 62, 75.) |
| 10a | References a "wild party" that "Clayton threw at Eric and Amy's house" that became "a turning point in their relationship." | The Complaint alleges that the New Year's party was a significant event in the deterioration of Eric and his children's relationship (Comp. ¶ 57, 58, 104, 106, 108, 172, 182.) |
| 10b | "'. . . neither Clay nor Kath could go over to [Amy and Eric's] house unless they were invited. It was like they were strangers in their own home.'" | The Complaint alleges that Kathryn and Clayton were not welcome in Eric's home. (Comp. ¶ 109.) |
| 14 | "To make sure Clayton, Kathryn, and Fred wouldn't come [to a memorial service], she stationed armed guards outside the doors." | The Complaint alleges that Amy communicated to Eric's children that they were not welcome at the service and that the venue provided security (Comp. ¶ 113.) |

As these examples show, Plaintiff's "falsity" arguments depend on implications not stated in the Article. She argues Challenged Statement 1 casts her as a "villainous stepmother" who intentionally divided the family. (*See* Pl.'s Opp. to the Carmen Family Defendants, ECF No. 22,

at 3 ("**Opp. 2**")).[2] But Challenged Statements 1c and 1d merely state that Clayton came to Plaintiff's house to reconcile and they closed the curtains and called the police. The Complaint admits the curtains at Plaintiff's house were always closed, that Clayton came to the house and Eric called the police. (Comp. ¶ 100.) Whether the curtains were closed before or after Clayton arrived does not negate the substantial truth of the words that were reported.

As to Challenged Statement 2b, Plaintiff argues she did not "inspire" lawsuits against the family, but the Complaint concedes she is involved in multiple lawsuits with Eric's family. (Comp. ¶ 88.). Plaintiff's Opposition mischaracterizes Challenged Statement 3, which does not state that Plaintiff caused the family estrangement, but accurately reflects Plaintiff's accusation that Clayton and Kathryn planned Eric's murder. (Comp. ¶ ¶104, 106.)

With respect to Challenged Statements 7a, 7b, and 7c, Plaintiff argues she did not have a scheme to cause family rifts, but those statements don't say that she did. Statements 7a-7c merely state that she has accused Eric's children of attempting to murder him, which her Complaint admits is true (Comp. ¶ ¶104, 106). Her challenge to the truth of Challenged Statement 8 makes no sense—the Complaint admits that Plaintiff and Eric moved to Arizona, withheld this fact from Eric's family, and resisted attempts at contact. (Comp. ¶ 74.)

Challenged Statement 9a accurately reflects the allegations in the Complaint that the family estrangement followed the start of Plaintiff's relationship with Eric. (Comp. ¶¶ 9, 51, 62, 75.) Plaintiff objects to Challenged Statements 10a and 10b, which describe a New Year's Eve party as a turning point—arguing that she was not involved in the party. (Opp. 1, at 16.) But these

---

[2] Most of Plaintiff's arguments that refer to specific Challenged Statements appear in one of two charts: one in Plaintiff's Opposition to the Rolling Stone Defendants' Motion to Dismiss (Opp. 1 at 15-16) and the other in Plaintiff's response to the Carmen Family's Motion for Expedited Relief (Opp. 2 at 3-4). The charts are similar, but Plaintiff includes some arguments in Opposition 2 that she does not include in Opposition 1, and vice versa. This reply responds to arguments raised in both charts. Also, in Opposition 1, Plaintiff conflated her overall claim for defamation with the defamatory meaning element of that claim. While her chart includes arguments that refer to other elements of defamation (falsity. Statement of fact, etc.), the chart is found in the defamatory meaning section of Opposition 1.

statements do not discuss Amy's involvement and are consistent with her allegations that the party was a significant event in the breakdown of Eric's relationship with his children. (Comp. ¶¶ 57, 58, 104, 106, 108, 109, 172, 182).

As to Challenged Statement 13, Plaintiff's Opposition argues only that Challenged Statement 13c is false. The Rolling Stone Defendants have established 13c to be nonactionable opinion and nondefamatory under *Croce*, and, for the purpose of this Motion only, have raised no arguments in regard to its falsity. However, the Motion established, and Plaintiff does not contest, that Challenged Statements 13a and 13b are substantially true—they describe Eric and Amy's response to Clayton's academic misconduct and do not assert that Plaintiff harmed Clayton's education.

Challenged Statement 14 fares no better. Plaintiff argues it is false because she did not hire armed guards to prevent the family from entering Eric's memorial, but her Complaint alleges that security was stationed at the event (which Plaintiff organized and paid for) and that Eric's children were intentionally excluded—precisely the gist of Challenged Statement 14. (Comp. ¶ 113.)

Finally, Plaintiff's arguments regarding Challenged Statement 15b, focus on the statement that Plaintiff threw a "tantrum" to prevent Kathryn from speaking at Eric's memorial, but the Complaint alleges that Kathryn was excluded from the event and the issue whether Plaintiff threw a tantrum is both opinion and nondefamatory. (*See* Comp. ¶ 114.) Because the allegations in Plaintiff's Complaint confirm the substantial truth of 1c, 1d, 2a, 2b, 3, 7a, 7b, 7c, 8, 9a, 10a, 10b, 13a, 13b, 14, 15a and 15b, any defamation claim based upon these statements cannot survive.

### C. The Opposition fails to show the Challenged Statements are anything but nonactionable opinion.

The Motion demonstrated that Challenged Statements 1a, 1c, 1d, 2b, 4, 5, 6, 7b, 7c, 7d, 9b, 10b, 11b, 12, 13c, 14, 15a and 15b are nonactionable opinions. Plaintiff's Opposition does not refute that showing. The applicable opinion factors confirm these statements are protected.

Ignoring this, Plaintiff's arguments rest on the assumption that her view of the family estrangement is objectively true, while any contrary opinions are fallacious and defamatory lies. According to Plaintiff, Rolling Stone should not have published a balanced article that presented any competing opinions, but only Plaintiff's opinions, presented as gospel. That is not the law. Plaintiff's citation to *Niotti-Soltesz v. Piotrowski*, 86 N.E.3d 1 (Ohio Ct. App. 2017), *Hartman v. Kerch*, 217 N.E.3d 881 (Ohio Ct. App. 2023), and *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2013 WL 623495 (N.D. Ohio Feb. 19, 2013) does not save her claim. The court in *Niotti-Soltesz* found that the term "con artist" was a nonactionable opinion under Ohio's four-factor test, even though that term has a "definite and unambiguous meaning," *See* 86 N.E.3d at 7-8. *Braun* is even less helpful, as it includes no opinion analysis. 2013 WL 623495, at *13 (analyzing whether the plaintiff had properly alleged the publication element of her defamation claim).

Plaintiff again relies on an unsupported legal conclusion when she states that "[e]ach of the [Challenged] Statements sets forth one or more objective and definite allegations which are independently verifiable." (Opp. 1, at 9.) The single example she offers—that Clayton's use of the "skimpiest" meal plan can be verified by his college records—is unpersuasive. (*Id.*) Those records may show which meal plan was purchased for Clayton, but they cannot establish or refute Clayton's subjective belief that it was "skimpy." Plaintiff's further references to case law addressing accusations of "criminal or ethical misconduct" are not relevant either. Plaintiff does not identify any Challenged Statement accusing her of a crime or professional rule violation.

Finally, Plaintiff's context arguments sidestep the fact that the Article repeatedly includes her own views and those of Eric's bandmates—many of which support her narrative. The only "context" she cites is Greene's introductory framing that, "in the final years of his life [Eric] was estranged from much of his family—and went down a rabbit hole of far-right conspiracies." That framing simply confirms that the Article centered on Eric, not on Amy, and offers no basis to conclude that the family's comments were presented as anything other than their subjective opinions.[3] The Article even expressly states that it is presenting a "complex portrait [of Eric] that varies wildly, depending on who's doing the telling." (Comp. Ex. A, PAGEID # 74.)

The broader context of the Article confirms this. Although Plaintiff compares Rolling Stone to The New York Times and calls it an "online news source," Rolling Stone is equally known for commentary and criticism—especially in music—and this Article appears in the publication's "music" section. That context further underscores that Challenged Statements 1a, 1c, 1d, 2b, 4, 5, 6, 7b, 7c, 7d, 9b, 10b, 11b, 12, 13c, 14, 15a and 15b present nonactionable opinions and any claims based on these statements should be dismissed as a matter of law.

**D. Plaintiff does not meaningfully respond to the arguments that certain Challenged Statements are not "of and concerning" Amy Carmen.**

Plaintiff's entire "of and concerning" argument boils down to one, repeated phrase: "This statement is of and concerning Amy (it mentions her by name)." (Opp. 1, at 15-16.) But the mere appearance of Plaintiff's name in a sentence does not automatically make *her* the subject of the statement, nor does it satisfy the "of and concerning" requirement. As courts have held, the

---

[3] Plaintiff also criticizes the Rolling Stone Defendants' reliance on *Bentkowski* by arguing that the humorous and sarcastic context of the challenged statements in that case differs from the much more serious context of the Challenged Statements here. But *Bentkowski* does not stand for the proposition that humor and sarcasm are the only way to indicate to a reasonable reader that the author is presenting a statement of opinion, and the Rolling Stone Defendants' reliance on *Bentkowski* does not suggest as much. *Bentkowski* stands for the proposition (among others) that a court should utilize the general context of an article to assess whether a statement is one of opinion. This is how the Rolling Stone Defendants rely on *Bentkowski*, and Plaintiff's arguments do not address, much less undermine, this reliance.

question is whether "a reader familiar with [the plaintiff] would identify [the plaintiff] as *the subject* of the statements at issue." *Jankowicz v. Fox News Network, LLC*, No. 24-2544, 2025 WL 2630572, at *2 (3d Cir. Sept. 12, 2025) (emphasis added). Plaintiff never addresses this principle. Worse, Plaintiff raises "of and concerning" arguments for certain Challenged Statements that the Rolling Stone Defendants do not dispute are about her. (*See* Opp. 1, at 12 (asserting that Challenged Statement 14 is "of and concerning" Amy—an issue the Rolling Stone Defendants do not dispute).)

Plaintiff's claims based upon Challenged Statements 1a, 1b, 2a, 4, 6, 7a, 10b, 11a, 12, 13a and 13b should be dismissed for failure to state a claim because these statements are not of and concerning her. The subject of Challenged Statement 1a is Clayton, and it does not include Amy's name or refer to her. Challenged Statement 2a is about Fred Carmen and mentions Amy only to indicate that Amy called Fred to inform him of Eric's death. Challenged Statement 4 concerns Eric and is nondefamatory for the other reasons identified in the Rolling Stone Defendants' Motion. (Mot. To Dismiss, ECF No. 12, at 5, 20, 26 (arguing the statement is nonactionable opinion and is balanced by Plaintiff's perspective).) The latter half of Challenged Statement 6 is "of and concerning" Amy but is nonactionable because it is an opinion and is rebutted by Plaintiff's statements in the Article. (Mot. to Dismiss, ECF No. 12, at 27.) It is the first sentence in Challenged Statement 6 that is not "of and concerning" the Plaintiff—it details Clayton's belief that Eric was manipulatable, paranoid, and isolated. Challenged Statement 7a is about Kathryn's diaries, or Amy's attorneys, not Amy herself. Challenged Statement 10b does not mention or refer to Amy. Plaintiff never addresses Challenged Statement 11a, which also does not name her. Challenged Statement 12 is about Eric and Clayton, with only a brief and unrelated reference to Amy calling

a prenuptial agreement "questionable" (which is nondefamatory). Challenged Statement 13a is about Clayton and Challenged Statement 13b (which Plaintiff ignores) does not mention her name.

None of these Challenged Statements are "of and concerning" Amy, and Plaintiff's argument that the statements are "of and concerning her" because they include her name is either inaccurate because they do not reference her name, or incorrect because the inclusion of her name does not make her the subject of the assertion. Nor does her position undermine any of the independent bases the Rolling Stone Defendants offered in support of dismissal of these Challenged Statements. For this reason alone, and for the independent grounds in the Rolling Stone Defendants' Motion, Plaintiff's claims based upon Challenged Statements 1b, 2a, 4, 6, 7a, 10b, 11a, 12, 13a and 13b should be dismissed.

**E. Plaintiff fails to adequately respond to the arguments that certain Challenged Statements do not carry a defamatory meaning.**

Plaintiff has failed to show how Challenged Statements 1a, 1b, 1c, 2a, 7a, 8, 9a, 10a, 11b, 12, 13b, 15a, and 15b—which the Rolling Stone Defendants have demonstrated carry no defamatory meaning—tend to expose her to public ridicule, shame, or disgrace. Plaintiff offers no argument at all pertaining to Challenged Statements 1a, 1b, 2a, 7a, 9a, 13b, and 15a; her defamation claim premised on these statements should therefore be dismissed outright. Conversely, Plaintiff asserts that Challenged Statements 4 and 14 carry defamatory meaning. But the Rolling Stone Defendants never sought to dismiss these Challenged Statements on the grounds they lack "defamatory meaning," instead demonstrating that these statements are substantially true, nonactionable statements of opinion, were not of and concerning Plaintiff, and were buttressed by Plaintiff's perspective. (Mot. to Dismiss, ECF No. 12, at 5, 8.)

Where Plaintiff does attempt to address specific statements—most notably Challenged Statement 8 and 10a—her theory does not rely on the statements' actual words, but on implications

she claims the Article conveys. (Opp. 1, at 13 ("[Certain statements] are used to *imply* that Plaintiff was the gatekeeper responsible for Eric's alienation…")); (Opp. 1, at 14 ("The [Challenged] Statements . . . are deployed *to suggest* that Plaintiff acted improperly.").) This approach fails for two independent reasons. First, this disregards the fact that the Article expressly states that it is a collection of diverging viewpoints and does not adopt any of them. (Comp. Ex. A, PAGEID # 74.) Second, and more importantly, Ohio does not recognize defamation by implication. *Woods v. Sharkin*, 192 N.E.3d 1174, 1190 (Ohio Ct. App. 2022).

Plaintiff's theory rests on her belief that the Article portrays her as the sole cause of Eric's estrangement from his children. (*See e.g.*, Opp. 2, at 6 ("[T]he true purpose of the Article was to … falsely disparage Amy.").) But that is not what the Article says. Even the title of the Article makes clear that it is a story about Eric Carmen's life (Comp. Ex. A ("*Eric Carmen Was a Power-Pop Legend. Then He Vanished*").) And the entire Article that follows is framed around Eric—his relationships, decisions, and the conflicting views of those who know him. The Article acknowledges that the causes of his estrangement are disputed, presenting multiple viewpoints without taking sides. This context leaves the reader with the understanding that those closest to Eric dispute the cause of his estrangement—not that Amy was the cause of it. Plaintiff never explains why the Article's presentation of diverging viewpoints can be found to be statements of fact that subject Plaintiff to ridicule and disdain.

Further, by relying on purported implication, rather than the language of the Challenged Statements themselves, Plaintiff essentially concedes that these statements do not, on their face, carry a defamatory meaning. And because Ohio does not recognize defamation by implication, her arguments must fail. *Woods*, 192 N.E.3d at 1190.

Plaintiff's charts underscore the same flaws. Rather than identifying how specific language lowers her reputation, she largely summarizes the Challenged Statements or repeats her overarching implication theory. This does nothing to demonstrate defamatory meaning. For the Court's convenience the key Challenged Statements that lack defamatory meaning are presented again below, showing the Plaintiff's purported meaning with the actual language published. Plaintiff's reliance on implication confirms these statements do not carry a defamatory sting.

| Stmt. | Plaintiff's Alleged Defamatory Meaning | Actual Statement |
|---|---|---|
| 1c | "It subjects Amy to contempt and ridicule for allegedly calling the police on her stepson when he was supposedly attempting to reconcile their differences with an 'overture… Amy is falsely cast as the villainous stepmother who divided and harmed a family by manipulating Eric." (Opp. 1, at 15.) "Amy is falsely cast as the villainous stepmother who divided a family, caused a family to become estranged, harmed Eric's children, manipulated Eric and others, and schemed to control Eric and his finances, all to her supposed benefit. A reasonable person would be highly offended by this statement." (Opp. 2, at 3.) | "The 27-year-old hadn't seen her since his high school days, when Clayton knocked on the door of the house that Amy shared with his dad in an attempt to finally reconcile their differences." |
| 8 | "[The statement] subjects Amy to contempt and ridicule since it accuses her of resisting Clayton and Kathryn's (nonexistent) innocuous efforts to reconnect with their father." (Opp. 1, at 15.) "[The statement] has a defamatory meaning [by] … giving another example of how [Amy] fulfilled the role of 'evil stepmother.'" (Opp. 2, at 4.) | "In April 2018, [Eric] and Amy left Ohio to resettle in Arizona, but withheld telling the other members of the Carmen family; they resisted any attempt by Clayton and Kathryn to reconnect, as well." |
| 10a | "[The statement] has defamatory meaning that subjects Amy to contempt and ridicule since it accuses Amy of making children feel 'like they were strangers in their own [father's] home,' again on the theme of intentionally dividing the family." (Opp. 1, at 16.) | "Both sides of the Carmen family divide cite a wild party that Clayton threw at Eric and Amy's house when they were out of town as a turning point in their relationship." |
| 12 | "[The statement] has a defamatory meaning by casting [Amy] as someone who meddled | "When Clayton graduated from high school and planned on enrolling at NYU, he says, he learned that his |

| | | |
|---|---|---|
| | with her stepchildren's education." (Opp. 1, at 16.) | father wasn't willing to pay for it. Per what Amy calls 'a very questionable prenuptial agreement' with his ex-wife Susan, Eric had to provide tuition for an in-state school. But Eric wouldn't pay for Ohio State, either, leading to a legal battle between the father and the son. 'I never, ever, ever wanted it to come to that,' says Clayton, 'but those were the options I was facing, and it was like, this isn't little, menial [expletive], this is my college education, and this is something that gives me the basis to start the rest of my life.'" |
| 15b | "[The statement] has defamatory meaning that subjects to Amy to contempt and ridicule since it accuses Amy of engaging in immature and immoral conduct to disassociate Eric from his children and to cause a disruption in the family." (Opp. 1, at 16.) "[In the statement] Amy is falsely cast as the villainous stepmother who divided a family, caused a family to become estranged, harmed Eric's children, manipulated Eric and others, and schemed to control Eric and his finances, all to her supposed benefit. A reasonable person would be highly offended by this statement." (Opp. 2, at 4.) | "For the first time in years, Amy was in the same room with Susan, Clayton, and Kathryn. 'Kathryn had been told she'd have time to share some remarks she wrote,' says Clayton, who recently took a job at the talent agency CAA, in the music brand-partnerships division, 'but Amy threw a tantrum backstage and delayed the ceremony by 45 minutes, so my sister and I watched from the crowd without any acknowledgment and had to watch Amy speak and accept the award on my dad's behalf." |

Plaintiff's only focused argument concerns 11b, but it also fails. That statement merely indicates that Clayton warned Fred to "watch out for Amy" which is a subjective, nonactionable opinion, not a provably false statement of fact. Further, the Article immediately follows with Plaintiff's response that Clayton was "completely inaccurate." (Comp. Ex. A, PAGEID # 100.) This presentation of competing perspectives without adopting any side, repeats throughout the Article, which is precisely the type of reporting found to be nonactionable under *Croce*. Accordingly, even if a portion of Challenged Statement 11b concerns Plaintiff, it is nonactionable for these independent reasons, as set forth in the Rolling Stone Defendants' Motion.

None of Plaintiff's above characterizations of the Challenged Statements are persuasive. Plaintiff's defamation claim premised on Challenged Statements 1a, 1b, 1c, 2a, 7a, 8, 9a, 10a, 11b, 12, 13b, 15a, and 15b should therefore be dismissed for failure to state a claim.

**F. Plaintiff defamation by omission argument is not supported by Ohio law.**

Plaintiff accuses the Rolling Stone Defendants of asserting, "largely by *ipse dixit*," that Ohio does not recognize defamation by omission. But Ohio law requires a plaintiff to plead and prove "a false statement of fact was made" and that "the statement was published." *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012). Publication is indispensable: "The publication of defamatory matter is an essential element to liability for defamation." *Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993).

This requirement reflects a foundational principle. In *Miami Herald Publ'g Co. v Tornillo*, the United States Supreme Court struck down a statute requiring newspapers to publish replies, holding that the freedom of press protects not only the right to speak, but also the right not to speak. 418 U.S. 241, 258 (1974). As the Court explained, "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper . . . —whether fair or unfair—constitute the exercise of editorial control and judgment." *Id.* The First Amendment does not permit courts to impose liability on the press for declining to publish the words Plaintiff wishes has appeared. Plaintiff's theory would do exactly that and therefore fails as a matter of law.

Plaintiff's own authorities confirm the point. The cases she cites all rejected defamation by omission theories and dismissed defamation claims. *Labban v. Mahon*, No. 21-3091, 2021 WL 6777029, at *2 (6th Cir. Sept. 23, 2021) (calling pro se plaintiff's defamation by omission theory "insufficient to establish that Mahon made a false or defamatory statement" and emphasizing that a statement is not defamatory even if it fails to disclose all relevant facts); *Dickinson v. Spieldenner*,

No. CI0201404424, 2016 WL 8792226, at *3 (Ohio Com.Pl. Feb. 08, 2016)[4] (finding that the plaintiffs defamation by omission theory failed where the allegedly omitted facts were included in the record). *See also Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (analyzing Michigan law and finding that the plaintiff's omission arguments relied on a "strained reading" of the report at issue).

And to the extent Plaintiff's defamation by omission theory is merely defamation by implication under another label, Ohio does not recognize that cause of action either. *Woods*, 192 N.E.3d at 1190. Plaintiff's attempt to base liability on details not published in the Article runs headlong into well-established Ohio law and the First Amendment. Any claims premised on a purported omission should therefore be dismissed.

**G. Plaintiff has not shown why her false light claim should avoid dismissal.**

Plaintiff briefly references, and does not dispute, the Rolling Stone Defendants' citation to caselaw establishing that a false light claim in Ohio must be based either on: (1) false statements that reveal intimate and personal details of a person's private life; or (2) statements portraying a person in an undeservedly favorable light. Plaintiff must show her claims fall into one of these categories because it is the only way her false light claim can survive where her defamation claim fails. But Plaintiff never attempted to show her false light claims fall into either of these categories.

The Rolling Stone Defendants' Motion and this Reply have established numerous ways that Plaintiff's defamation claims should be dismissed as a matter of law. Accordingly, it was incumbent upon Plaintiff to show how the Challenged Statements portrayed intimate details of her private life or otherwise placed her before the public in a misleadingly positive way. She does

---

4 Plaintiff's brief incorrectly cites this case as *Dickinson v. Toledo Pub. Sch. Bd. of Educ.*, No. G-4801-CI 2014-4424, 2016 Ohio Misc. LEXIS 2889 (Ct. Com. Pl. Feb. 8, 2016). (Pl.'s Br. at 17.) Such a case does not appear to exist. The quote Plaintiff includes appears in the case cited above.

neither. Instead, she merely labels various statements "offensive" and without analysis, concludes that anything touching on her "familial relationships" is automatically an intimate and personal detail. That assertion disregards Ohio law, which defines "intimate and personal" details to include allegations that a plaintiff was the victim of sexual harassment, poverty stricken, or suffering from terminal illness or depression. *Welling v. Weinfeld*, 866 N.E.2d 1051, 1055 (Ohio 2007) (collecting cases). Plaintiff's allusions to statements calling her an "evil stepmother" and "sycophant" who searched her stepchildren's rooms for information to harm their relationships are not the kind of allegations that amount to "intimate and personal" details of a plaintiff's life. Unlike the details referenced in *Welling*, these statements do not implicate anything intimate.

Plaintiff next invokes *Mahdy v. Mason City Sch. Dist.*, No. 1:16-CV-845, 2018 WL 1327211 (S.D. Ohio Mar. 15, 2018), calling the false light claim there "attenuated" and arguing if the false light claim in *Mahdy* survived, then hers should too. (Opp. 1, at 20.) But *Mahdy* bears no resemblance to this case. There, a newspaper published a photograph and full name of a five-year-old child alongside an article falsely suggesting that this child—together with 50 other students—were "overwhelming" school resources because she was from Saudi Arabia and spoke no English. In reality, the child spoke English, was a U.S. citizen and resident, and was unaffiliated with the program described in the article. The complaint in *Mahdy* alleged objectively false statements, and the publication of the minor's image without parental consent influenced the Court's analysis.

Here, by contrast, Plaintiff challenges an Article that reports substantially true, nondefamatory and opinion-based speech about an adult, and that repeatedly includes her own denials and explanations. The Article does not include any photo of Plaintiff, let alone a photo that portrays her in a false light. Plaintiff may be upset by the Article, but she never explains how these statements—considered in context—place her in false light that would be highly offensive to a

reasonable person. Nor does she explain how the Article could possibly be found to be highly offensive to a reasonable person when it included her own statements, as well as those of Eric's bandmates that align with her account.

Lastly, Plaintiff's actual malice theory—that she gave Greene "clear proof' his sources were "lying"—reflects only her conclusory belief that her view of Eric's estrangement is the only objectively true one and anything that contradicts her view is false. The Article attributed competing perspectives and adopted none. That is not actual malice; it is responsible reporting. The absence of any pleaded facts that would support a showing of knowledge of falsity or reckless disregard, is yet another reason her false-light claim fails, along with her claim for defamation, as a matter of law.

## IV. CONCLUSION

For the foregoing reasons and the reasons set forth in Motion, all Plaintiff's defamation and false light claims against the Rolling Stone Defendants should be dismissed with prejudice.

Respectfully submitted,

*<u>/s/ Kevin T. Shook</u>*

Kevin T. Shook (0073718)
Amy E. Mildebrath (0104565)
FBT GIBBONS LLP
10 West Broad Street, Suite 2300
Columbus, Ohio 43215
P: (614) 464-1211; F: (614) 464-1737
kshook@fbtgibbons.com
amildebrath@fbtgibbons.com

*Attorneys for Defendants Penske Media Corporation and Andy Greene*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on February 4, 2026 via the Court's ECF system to all counsel of record.

*/s/ Kevin T. Shook*
Kevin T. Shook (0073718)