**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| AMY CARMEN, | |
| Plaintiff, | **Case No. 1:25-cv-01671** |
| vs. | **Judge Charles Esque Fleming** |
| PENSKE MEDIA CORPORATION, ANDY GREENE, FRED N. CARMEN, CLAYTON E. CARMEN, and KATHRYN L. CARMEN, | **Jury Trial Demanded** |
| Defendants. | **Oral Argument Requested** |

**PLAINTIFF AMY CARMEN'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FRED N. CARMEN'S MOTION TO DISMISS**

Edward Andrew Paltzik
Meredith R. Lloyd (0102173)
Taylor Dykema, PLLC
914 E. 25th Street
Houston, TX 77009
(516) 526-0341
edward@taylordykema.com
meredith@taylordykema.com

*Counsel for Plaintiff Amy Carmen*

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................... 1

II.   Statement of Facts ................................................................................................ 1

III.   Standard of Review ............................................................................................. 2

IV.   Argument ............................................................................................................. 4

    A.   Fred Improperly Attempts to Argue Facts Not Present in the Complaint ..................... 4

    B.   Ohio's Anti-SLAPP Law Does Not Apply to This Action ............................................ 5

    C.   Plaintiff has Properly Stated a Defamation Claim Against Fred as Each of the Actionable Statements is a False Statement of Fact About Amy ........................................... 6

        i.   Actionable Statement #11 is Actionable as it is Neither an Opinion nor True .......... 8

        ii.   Regardless of Any Hedging Language, Actionable Statements 2, 4, and 9 are Not Opinions as They Allege Conduct by Amy ....................................................................... 11

    D.   Fred's Defamatory Statements Constituted Defamation *Per Se* Because They Exposed Amy to Public Hatred, Ridicule, and Contempt ................................................................. 13

    E.   Fred's Defamation by Omission Argument is Not Applicable as Argued to the Actionable Statements Attributed to Him ................................................................................ 15

    F.   Plaintiff Has Properly Pled a False Light Claim ............................................................ 16

V.   Conclusion .......................................................................................................... 18

CERTIFICATE OF SERVICE ................................................................................. 20

CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT ...................................... 21

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Compuware Corp. v. Moody's Inv'rs Servs.*,
499 F.3d 520 (6th Cir. 2007) ...............................................................................................15

*Croce v. Sanders*,
843 F. App'x 710 (6th Cir. 2021) .......................................................................... 10, 11, 12

*Dickinson v. Toledo Pub. Sch. Bd. of Educ.*,
No. G-4801-CI 2014-4424, 2016 Ohio Misc. LEXIS 2889 (Ct. Com. Pl. Feb. 8, 2016) ....................16

*Estate of Barney v. PNC Bank, Nat'l Ass'n*,
714 F.3d 920 (6th Cir. 2013) ...............................................................................................10

*Fuchs v. Scripps Howard Broadcasting Co.*,
868 N.E.2d 1024 (Ohio Ct. App. 2006) ................................................................................6

*Green v. CBS Inc.*,
286 F.3d 281 (5th Cir. 2002) ...............................................................................................15

*Green v. Mason*,
504 F.Supp. 3d 813 (S.D. Ohio 2020)..................................................................................13

*Gunasekera v. Irwin*,
551 F.3d 461 (6th Cir. 2009) ............................................................................................2, 3

*Haines v. Welling*,
7-Ohio-253 (1835) .................................................................................................................9

*Hartman v. Kerch*,
217 N.E.3d 881 (Ohio Ct. App. 2023) ...............................................................................3, 4

*Hersh v. Grumer*,
176 N.E.3d 1135 (Ohio Ct. App. 2021).................................................................................3

*Krems v. Univ. Hosp. of Cleveland*,
726 N.E.2d 1016 (Ohio Ct. App. 1999))...............................................................................9

*Labban v. Mahon*,
No. 21-3091, 2021 U.S. App. LEXIS 28978 (6th Cir. Sep. 23, 2021)..................................16

*Mahdy v. Mason City Sch. Dist.*,
2018 U.S. Dist. LEXIS 42707 (S.D. Ohio Mar. 15, 2018) .............................................17, 18

*McKimm v. Ohio Elections Comm'n*,
729 N.E.2d 364 (2000)........................................................................................................10

*Mehta v. Ohio Univ.*,
958 N.E.2d 598 (Ohio Ct. App. 2011)..................................................................................12

iii

*Milkovich v. Lorain J. Co.,*
    497 U.S. 1 (1990)......................................................................................................................12

*Mitchell v. Lawson Milk Co.,*
    532 N.E.2d 753 (Ohio 1988)......................................................................................................3

*O'Brien v. Univ. Community Tenants Union, Inc.,*
    327 N.E.2d 753 (Ohio 1975))....................................................................................................3

*Office of Disciplinary Counsel v. Gardner,*
    793 N.E.2d 425 (Ohio 2003)....................................................................................................13

*Reddy v. JPMorgan Chase Bank, N.A.,*
    No. 2:09-cv-1152, 2011 U.S. Dist. LEXIS 46849 (S.D. Ohio May 2, 2011) ........................6

*Scott v. News-Herald,*
    496 N.E.2d at 699 (1986)...................................................................................................12, 13

*Spartan Chem. Co., Inc. v. Nat'l Chem. Labs. of PA, Inc.,*
    No. 3:17-cv-02487, 2018 U.S. Dist. LEXIS 199642 (N.D. Ohio Nov. 26, 2018) ...............3, 10, 11, 17

*Standing Commt. on Discipline, U.S. Dist. Court, Cent. Dist of Calif. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ...................................................................................................13

*Swoope v. Osagie,*
    76 N.E.3d 686 (Ohio Ct. App. 2016) .........................................................................................3

*Theiss v. Scherer,*
    396 F.2d 646 (6th Cir. 1968) .....................................................................................................9

*Vail v. Plain Dealer Publishing Co.*
    649 N.E.2d 182 (Ohio 1995)...........................................................................................3, 10, 12

*Volbers-Klarich v. Middletown Mgmt.,*
    929 N.E.2d 434 (Ohio 2010).......................................................................................................3

*Weidman v. Hildebrant,*
    254 N.E.3d 2 (Ohio 2023)...........................................................................................................9

*Welling v. Weinfeld,*
    866 N.E.2d 1051 (2007) .............................................................................................................16

*William Powell Co. v. Ocean Marine Ins. Co.,*
    2026 U.S. App. LEXIS 5955 (6th Cir. Feb. 27, 2026) ..............................................................4

*Young v. Gannett Satellite Information Network,*
    837 F.Supp.2d 758 (S.D. Ohio 2011) .........................................................................................3

iv

**Statutes and Rules**

Ohio Rev. Code  § 2739.02.............................................................................................................3

Ohio Rev. Code §2747.01.........................................................................................................1, 5

## I.     Introduction

Plaintiff, Amy Carmen ("Plaintiff" or "Amy"), submits this Memorandum of Law in Opposition to Defendant Fred N. Carmen's ("Defendant" or "Fred") Motion for Expedited Relief Under Ohio Rev. Code §2747.01, *Et Seq.*, Or, In The Alternative, Fed. R. Civ. P. 12(B)(6) Motion to Dismiss (the "Motion," cited herein as "Def. Br.").

The very composition of Fred's Motion draws attention to the weakness of its arguments. Fred's Motion attempts to dilute Amy's allegations in her Complaint by erecting a straw man, addressing statements in the subject article which he concedes were *not identified as actionable by Amy*, and then proceeds to knock down the straw man he erected. Thus, he utilizes his Motion as a grandstand to highlight benign statements attributed to him in the article which are entirely irrelevant to the claims against him. But this transparent tactic backfires, highlighting the culpable nature of the statements attributable to him which Amy *did* highlight in her Complaint. As such, and as discussed at further length *infra*, the Motion should be denied in its entirety.

As Fred explicitly incorporates by reference the statements of law and arguments contained in the briefs of Defendants Penske Media Corporation ("Penske") and Andy Greene ("Greene"; together with Penske, the "Rolling Stone Defendants") and Clayton E. Carmen and Kathryn L. Carmen (the "Stepchildren Defendants") submitted in support of their respective motions to dismiss, (ECF No. 29 at 1, referencing ECF Nos. 12, 16), the arguments in Plaintiff's oppositions to said motions (ECF Nos. 21, 22) are incorporated by reference herein.

## II.    Statement of Facts

This is an action for defamation and false light arising out of an article about Amy and her late husband Eric, who was a pop music legend. The article is entitled "*Eric Carmen Was a Power-Pop Legend. Then He Vanished,*" written by Greene and published in *Rolling Stone* magazine by Penske on January 19, 2025 (the "Article").  Compl. ¶ 2, Ex. A (ECF No. 2). The Article was

1

based on Greene's interviews of Clayton and Kathryn, their mother and Eric's ex-wife Susan Carmen, Eric's brother Fred, and others including former bandmates and friends. *Id*.

The Complaint identifies fifteen actionable false and defamatory statements published to *Rolling Stone's* audience (the "Actionable Statements"), including statements that, among other things, depict Amy as an "evil" stepmother and "bad news." Compl. ¶¶ 100–114; ECF No. 2. Of the Actionable Statements, four contained defamatory statements by Fred. Compl. ¶¶ 101, 103, 108, 110. Those statements claim that Amy orchestrated Eric's estrangement from Fred and the rest of Eric's family, including by causing Eric to initiate litigation against Eric's family members, so that Amy could control Eric. *Id.* [1]

Although Eric was a famous musician, Amy is not a public figure. Prior to the Article, she lived a carefully guarded private life. *See generally* ECF No. 21-1. The Complaint alleges that the Article's publication dragged her into unwanted public attention, vitriol, and ridicule. The Complaint alleges that Amy did not seek publicity regarding the Article or this litigation, Compl. ¶ 154, and did not "thrust" herself into any controversy, Def. Br. at 4. Rather, the Article revived private family matters and presented them to the public in a way that falsely disparaged her.

### III.  Standard of Review

It is well-settled that when considering a 12(b)(6) motion to dismiss, a Court must "construe the complaint in the light most favorable to the plaintiff." *Gunasekera v. Irwin*, 551 F.3d

---

[1] For additional context, Fred's statements were made after he signed a settlement agreement to resolve a lawsuit filed against him by, *inter alia*, Eric. The settlement agreement included a non-disparagement provision regarding Eric and Amy. Compl. ¶¶ 80, 82–83.

461, 466 (6th Cir. 2009). Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. *Mitchell v. Lawson Milk Co*., 532 N.E.2d 753, 756 (Ohio 1988).

In defamation cases, Ohio courts have made clear that dismissal is warranted only in cases where it "appear[s] beyond doubt that plaintiff can prove no set of facts entitling her to relief." *Volbers-Klarich v. Middletown Mgmt*., 929 N.E.2d 434, 437 (Ohio 2010) (citing *Vail v. Plain Dealer Publishing Co*. 649 N.E.2d 182 (Ohio 1995); *O'Brien v. Univ. Community Tenants Union, Inc*., 327 N.E.2d 753, syllabus (Ohio 1975)). Courts in this District and across Ohio have repeatedly found that "whether a defamatory statement is true is generally a question of fact to be decided by the trier of fact." *Spartan Chem. Co., Inc. v. Nat'l Chem. Labs. of PA, Inc.*, No. 3:17-cv-02487, 2018 U.S. Dist. LEXIS 199642, at *5 (N.D. Ohio Nov. 26, 2018); *Swoope v. Osagie*, 76 N.E.3d 686, 696 (Ohio Ct. App. 2016); *Young v. Gannett Satellite Information Network*, 837 F.Supp.2d 758, 764 (S.D. Ohio 2011). Indeed, "[t]he only matter to decide at this stage of litigation is whether the plaintiff has provided factual allegations which, if true, could result in recovery for the plaintiff." *Spartan Chem. Co.,* 2018 U.S. Dist. LEXIS 199642, at *6.

Ohio law provides defamation defendants the opportunity to "allege and prove" the truth of a defamatory statement as a defense. Ohio Rev. Code § 2739.02. ("[T]he defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense."). However, analysis of defenses at the motion to dismiss stage has been condemned as "an improper hybrid standard of review, which is not applicable to motions under Civ. R. 12(B)(6) and (C)." *Hersh v. Grumer*, 176 N.E.3d 1135, 1142 (Ohio Ct. App. 2021). "Whether a defamatory statement is substantially true is a question of fact" only to be resolved by courts on a motion for summary judgment "if no genuine issue of material fact exists after the

3

submission of evidence pursuant to Civ.R. 56." *Hartman v. Kerch*, 217 N.E.3d 881, 897 (Ohio Ct. App. 2023).

### IV.     Argument

#### A.     Fred Improperly Attempts to Argue Facts Not Present in the Complaint

Initially, this Court must ignore large swathes of Fred's brief submitted in support of his Motion. It is elementary that, in ruling on a motion to dismiss for failure to state a claim, "[a] district court should typically limit itself to the well-pleaded allegations within the complaint's four corners, and exhibits attached to the complaint." *William Powell Co. v. Ocean Marine Ins. Co.*, 2026 U.S. App. LEXIS 5955 at *15 (6th Cir. Feb. 27, 2026) (internal citation and quotation marks omitted).

Despite this most basic rule of federal court practice, Fred's papers[2] seek to inject significant amounts of factual matter into this Motion. These improper insertions include the fact that Fred (1) attached three exhibits to his Motion, *see* Def.'s Br. Exs. A–C; (2) attempts to argue the truth of one of the Actionable Statements by adding details about the alleged conversation, *id.* at 5; (3) made claims about his relationship with Eric, *id.* at 8; and (4) essentially attempts to impeach Amy by including a lengthy narrative—based on purported facts and an exhibit not included in the Complaint—about an Actionable Statement that *isn't even asserted against him*, *id.* at 9–10. Notwithstanding the fact that his tirade is entirely irrelevant to dismissal of the claims against him, Fred is using his Motion as a grandstand to repeat and amplify the malicious false claims about Amy which form the basis of this action.

---

[2] Pointedly, Fred submitted a "Brief in Support," Def. Br. at 1, not a declaration signed under penalty of perjury, another basis upon which to ignore the purported facts and exhibits contained therein.

None of this is permissible on a motion to dismiss. As such, this Court should ignore any attempts by Fred to argue in favor of dismissal based on purported facts which exist outside of the four corners of the Complaint and its exhibit.

### B.  Ohio's Anti-SLAPP Law Does Not Apply to This Action

Amy's memorandum of law in opposition to the Stepchildren Defendants' motion to dismiss exhaustively discussed the inapplicability of Ohio Rev. Code §§ 2747.01 *et seq.*, Ohio's new anti-strategic lawsuit against public participation ("anti-SLAPP") law, to the instant lawsuit. *See generally,* ECF 21. The Court is respectfully referred there for the bulk of Amy's argument as to the applicability of the anti-SLAPP statute. Amy only briefly addresses the specific points raised by Fred in his Motion. *See* Def. Br. at 3–4.

Fred does not quote from the language of the statute he seeks to invoke. However, his arguments are aimed at skirting the fact that Ohio's anti-SLAPP law only applies to the "exercise of the right of freedom of speech and of the press . . . on a matter of public concern." Ohio Rev. Code § 2747.01(B)(3)). In this regard, he argues that "the life and death of well-known pop star Eric Carmen" constitutes such a matter of public concern. Def. Br. at 4. Even if that were true— and it likely is not—that has no bearing on the applicability of the anti-SLAPP statute to the instant action. As argued more fulsomely in Amy's opposition to the Stepchildren Defendants' motion to dismiss, the statements at issue are in no way matters of public concern; they are private matters relating to the family life of the Carmens. *See* ECF No. 22 at 18–24.

It is also absurd that Fred argues that "Amy's participation in the article evidences her **intent** to remain in the public eye and dispense her skewed version of Eric's family and last years." Def. Br. at 4 (emphasis added). Amy did not seek out publicity for herself. The Article itself unambiguously notes that Amy "initially declined to be interviewed for this article[.]" (ECF No. 2 at 5). Similarly, the Complaint is clear that Greene reached out to Amy seeking to write an article

about Eric Carmen to "remind people that he was a true pop genius." Compl. ¶ 120. That is a far cry from an article lambasting a grieving widow and blaming her for any rifts that may have existed in the Carmen family. Fred, the Stepchildren Defendants, and others turned an article about Eric's musical legacy into a gossip piece.

Having tried to smear Amy—who had not, at that point, given any statement to the Rolling Stone Defendants—it is hypocritical for Fred to now claim that it was Amy who sought to remain in the public eye and claim, based on that fact, that his own badmouthing of Amy transforms his lies into a matter of public concern. Had Fred and others never defamed Amy, she would not have had to defend herself from their lies. Fred's statements about Amy's alleged efforts to manipulate her late husband are far from matters of public concern.  Ohio's anti-SLAPP statute has no bearing on this case.

### C.  Plaintiff has Properly Stated a Defamation Claim Against Fred as Each of the Actionable Statements is a False Statement of Fact About Amy

The essential elements of a claim for defamation under Ohio law are: (1) the defendant made a false statement, (2) that false statement was defamatory in the sense that it reflected unfavorably of the plaintiff's character or injured his trade or business, (3) the statement was published or communicated, and (4) the defendant acted with the necessary degree of fault. *Reddy v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-1152, 2011 U.S. Dist. LEXIS 46849, at *9 (S.D. Ohio May 2, 2011) (citing *Fuchs v. Scripps Howard Broadcasting Co.,* 868 N.E.2d 1024, 1034 (Ohio Ct. App. 2006)).

The Complaint alleges that four of the Actionable Statements are defamatory statements attributable to Fred, Compl. ¶¶ 101, 103, 108, 110, and Fred's Motion identifies each of these statements, Def. Br. at 2. Although discussed at further length *infra*, each of the identified statements are actionable based on the below factors:

6

| Stmnt. | Relevant Arguments |
|---|---|
| 2 | Statement #2 describes how Amy "inspir[ed] a series of lawsuits that separated" two brothers. This statement is of and concerning Amy (it mentions her by name). It is a false assertion of fact (Compl. ¶ 101), not an opinion, because Amy did not inspire any lawsuits or cause an estrangement. This assertion necessarily implies action by Amy to have inspired such lawsuits. |
| 4 | Statement #4 describes how Eric was "manipulated by Amy" to turn on his family. This statement is of and concerning Amy (it mentions her by name). It is a false assertion of fact (Compl. ¶ 103), not an opinion, because she did not manipulate Eric to turn on his family. It also has a defamatory meaning since it casts Amy as seeking to manipulate Eric to turn on his family. |
| 9 | Statement #9 cites Amy's relationship with Eric as the cause for his estrangement from his family, accuses her of "planning" to pull him away one person at a time, and accuses her of convincing her husband that "his entire family was engaged in a conspiracy against him." It is a false assertion of fact (Compl. ¶ 108), not an opinion, because it is an accusation of a plan, goal, and scheme to divide a family and cause an estrangement so she could control him. |
| 11 | Statement #11 claims Amy allegedly manipulated Eric into filing lawsuits that severed his relationship with Fred. It is a false assertion of fact (Compl. ¶ 110), not an opinion, because it alleges a statement by Amy and her instigation of litigation. It also has a defamatory meaning in identifying Amy as someone to "watch out for," alleging that she was lying to her husband to facilitate the breakdown of his relationship with Fred. |

Oddly, in an attempt to bootstrap the supposed non-actionability of these four Actionable Statements, Fred identifies three statements in the subject article attributable to him which (he explicitly recognizes) Amy did not claim were actionable. Def. Br. at 2–3. He then goes further, including argumentation that these additional statements are not actionable, a point no one has argued. *Id.* at 4–5. Rather than establishing that Fred's statements were uniformly non-actionable, his focus on these benign statements attributed to him, which are entirely irrelevant to the claims against him, highlights the culpable nature of the Actionable Statements attributable to him which Amy *did* identify as actionable in her Complaint.

7

### i. Actionable Statement #11[3] is Actionable as it is Neither an Opinion nor True

The first of the Actionable Statements addressed by Fred in his Motion, Def. Br at 5–6, is

Actionable Statement #11, which states:

> At this same time, Eric Carmen filed a lawsuit against Fred, alleging mismanagement of his finances, improperly using money to provide care for their mother, and excessively charging him legal fees throughout the divorce period. Fred says he first got wind that this might be coming when Carmen and Amy were at his house for a party. 'My nephew came to me,' says Fred. 'He said, 'You need to watch out for Amy. I just heard her say to my dad there was no way you could have paid for your new deck on your own.' 'That was the kind of thing Amy was saying to him to make him conclude I was stealing from him.'

Compl. ¶ 110. Fred argues that this statement is "Not Actionable Because It Expresses An opinion

and Is True." Def. Br. at 5. Neither of these characterizations are correct.

Initially, Fred claims that this statement is "true" because the conversation between Fred

and his nephew which is recounted in the statement literally took place. Def. Br. at 5 ("Fred and

Michael were the only two parties to the conversation and both can attest to its accuracy."). That

argument is an attempted end-run around the actual substance of this supposed conversation, which

was that Amy was trying to drive a wedge between Eric and Fred by convincing Eric that Fred

was stealing from Eric. As recounted in the Article, Amy explicitly denied that the conversation

addressed in the statement ever took place, (ECF No. 2 at 32) ("Amy says this is completely

inaccurate. 'I only saw Fred's deck one time, and frankly it wasn't that impressive,' she says. 'I

never told Eric or concluded that Fred "was stealing from him.""'), and similarly denied

commenting on Fred's deck in the Complaint, Compl. ¶ 110.

---

[3] Fred's Motion renumbers the Actionable Statements identified in the Complaint, only referencing statements made by him and adding irrelevant statements not identified by Amy. Def. Br. at 2–3. Amy's opposition refers to the numbering as identified in the Complaint. Compl. ¶¶ 101, 103, 108, 110.

That Fred's conversation with his nephew may have actually occurred does not insulate him from a claim for defamation based on a purportedly accurate recounting of his nephew's words. *Theiss v. Scherer*, 396 F.2d 646, 648 (6th Cir. 1968) ("We agree with appellant that one may not avoid the consequences of making a libelous statement merely by saying that he is repeating the words of another, even when that person is identified."); *see also Weidman v. Hildebrant*, 254 N.E.3d 2, 31 (Ohio 2023) ("[T]his court has never held that defamation causes of action accrue upon the first publication of the defamatory statement. *See Haines v. Welling*, 7-Ohio-253, 256 (1835) (noting that a defendant could be liable for slander for repeating a defamatory statement that originated from another person, i.e., 'whether the defendant be the author, or whether he be merely the propagator of a slander originating with another')") (Wilkin, J., dissenting)(citation in *Weidman*). Thus, Fred's argument that "Truth, of course, is an absolute defense to a claim for defamation," Def. Br. at 5, is irrelevant. The relevant "truthfulness" analysis is not whether Fred had the conversation with his nephew; it is whether Amy attempted to convince Eric that Fred was stealing from him.

And this entire line of argumentation is misguided. As discussed at greater length *supra*, whether the underlying statement is true (and as Amy alleges, it is not) is not an issue which should be considered on a motion to dismiss, as "whether a defamatory statement is true is generally a question of fact to be decided by the trier of fact." *Spartan Chem. Co.*, 2018 U.S. Dist. LEXIS 199642, at *5. A defendant cannot move to dismiss based on a defense of truth where the defendant "does not identify how the allegations in the complaint show the statements are true, making this a question for the trier of fact." *Id.* at *6 (citing *Krems v. Univ. Hosp. of Cleveland*, 726 N.E.2d 1016, 1019-20 (Ohio Ct. App. 1999)). If the Court is to evaluate the truth or falsity of each of the Actionable Statements, it must rely only on the Complaint and the Article to decide whether "the

9

common meaning ascribed to the words by an ordinary reader," *McKimm v. Ohio Elections Comm'n*, 729 N.E.2d 364, 371 (2000) (citing *Vail,* 649 N.E.2d at 186), supports the conclusion that each Actionable Statement is a false statement of fact. *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (Affirmative defenses are only appropriately considered at the motion to dismiss stage when the Complaint "contains facts which satisfy the elements of the defendant's affirmative defense.").

Fred also claims that this Actionable Statement was "entitled to absolute protection and cannot be defamatory" because "the conversation sets forth the basis for his opinion that it was Amy's intent to drive a wedge between him and Eric." Def. Br. at 5–6. But, as discussed *supra*, Fred's analysis is misguided because it assumes that Amy did, in fact, make a statement to Eric about Fred's deck aimed at convincing Eric that Fred was stealing from him. Fred's republication of that nonexistent statement could not be an opinion. Moreover, Fred claimed that Amy made more statements about Fred's mismanagement of Eric's finances, stating "That was **the kind of thing Amy was saying to him** to make him conclude I was stealing from him." Am. Compl. ¶ 110 (emphasis added). Once again, this statement was false, as Amy denied making any such statements to Eric: "I never told Eric or concluded that Fred 'was stealing from him.'" (ECF No. 2 at 32). Fred's emphasis on the opinion analysis, such as "whether the statement is verifiable," Def Br. at 6, thus cuts against him. Whether Amy made any of the statements he is alleging is a statement of fact which is inherently verifiable.

And even if, *arguendo*, this Actionable Statement was an opinion, as discussed at further length *infra*, a statement which "implies that the speaker has first-hand knowledge that substantiates the opinions he asserts can be on the hook for defamation even if he cloaks his

10

assertion in the language of argument or opinion." *Croce v. Sanders*, 843 F. App'x 710, 716 (6th Cir. 2021) (internal quotation marks omitted).

Because Actionable Statement #11 was neither an opinion nor a fact, and the same cannot properly be determined at this stage of the litigation unless it appears on the face of the Complaint, Fred's motion to dismiss with respect to this statement must be denied.

### ii. Regardless of Any Hedging Language, Actionable Statements 2, 4, and 9 are Not Opinions as They Allege Conduct by Amy

Fred claims that Actionable Statements 2, 4, and 9 cannot be defamatory because they "express Fred's opinion **regarding Amy's actions** and intentions." Def. Br. at 7 (emphasis added).[4] This, of course, concedes the argument: these statements are about "Amy's actions," actions which Amy disputes ever actually occurred. Those Actionable Statements allege, respectively, that Amy "inspire[ed] a series of lawsuits" against Eric's family members, "manipulated" Eric into "turn[ing] on his family," and "made [Eric] believe his entire family was engaged in a conspiracy against him." Compl. ¶¶ 101, 103, 108. And yet, as proof of these supposed facts, that it was "by Amy's design" that Fred and the Stepchildren Defendants became estranged from Eric, Fred only argues one point by *contesting* an allegation in the Complaint,[5] namely arguing that it had been Amy who discovered Kathryn's diary where she had written she had a plan to kill Eric, even though the Complaint alleges that it was Eric or a housekeeper which discovered it.[6] *See* Compl. ¶ 62. Having only (wrongly) identified one example in the Complaint

---

[4] More than half of this section in Fred's brief is devoted to addressing the alleged truthfulness of statements Fred made about Eric. As those statements are irrelevant to Amy's claims, they are not addressed.

[5] As noted *supra*, a movant must show "how **the allegations in the complaint** show the statements are true" to prevail on a motion. *Spartan Chem. Co.*, 2018 U.S. Dist. LEXIS 199642, at *6 (emphasis added).

[6] Fred's speculation that Amy was the one who found Kathryn's diary (when the Complaint alleges otherwise, *see* Compl. ¶ 62), that this diary entry was "juvenile rambling," and arguing that the

11

of Amy orchestrating a plot to estrange a man from his family, Fred cannot argue that his statements "go[] to Amy's internal motivation," Def. Br. at 8, as to conduct that cannot be established on this motion as having occurred.

Fred attempts to argue that his statements about Amy's purported actions are nonactionable because the language in the Article "would put a reasonable reader on notice that the statements contained therein were opinions and not statements of fact." Def. Br. at 8. Initially, this ignores the fact that Fred's statements to Greene themselves were defamatory. But, regardless, the language of the Article Fred points to, such as "Fred blames," Def. Br. at 8–9, does not insulate Fred from liability. A defendant cannot evade defamation liability by "simply couching a statement" as opinion. *Milkovich v. Lorain J. Co.,* 497 U.S. 1, 2 (1990) ("Simply couching a statement—'Jones is a liar'—in terms of opinion—'In my opinion Jones is a liar'—does not dispel the factual implications contained in the statement."). Fred, like the Stepchildren Defendants, is entitled to have his own opinion about Amy. What creates liability, however, is accusing her of unethical or otherwise unsavory behavior. Dressing up those accusations as being his opinion of Amy, or his belief as to why his relationship with Eric suffered, does not negate his liability for making such accusations about Amy.

Sixth Circuit and Ohio precedent both echo this rule. So long as the statement at issue "implies that the speaker has first-hand knowledge that substantiates the opinions he asserts," that person "can be on the hook for defamation even if he cloaks his assertion in the language of argument or opinion." *Croce v. Sanders*, 843 F. App'x 710, 716 (6th Cir. 2021) (citing *Vail*, 649 N.E.2d at 186; *Mehta v. Ohio Univ.*, 958 N.E.2d 598, 609 (Ohio Ct. App. 2011)) (alteration

conclusions he reaches because of that speculation are opinion, *see* Def. Br. at 7–8, are not cognizable on a motion to dismiss.

12

omitted); *Scott v. News-Herald,* 496 N.E.2d at 699, 707 (1986) ("[O]ne should not escape liability for accusations of crime simply by using, explicitly or implicitly, the words 'I think.'") (internal quotation marks omitted). As recognized in *Office of Disciplinary Counsel v. Gardner*, statements that can reasonably be understood as describing wrongful acts are not immune from defamation liability just because they are phrased in the form of an opinion. 793 N.E.2d 425, 430 (Ohio 2003) (citing *Standing Commt. on Discipline, U.S. Dist. Court, Cent. Dist of Calif. v. Yagman,* 55 F.3d 1430, 1440 (9th Cir. 1995)).

Having made statements of fact—to wit, that Amy, *inter alia*, in some way inspired lawsuits, manipulated Eric to turn on his family, and convinced Eric of a non-descript conspiracy against him by his family—Fred's attempt to argue that his statements were merely opinions do not warrant dismissal of the Complaint as against Fred.

### D. Fred's Defamatory Statements Constituted Defamation *Per Se* Because They Exposed Amy to Public Hatred, Ridicule, and Contempt

Fred recognizes that defamation *per se* can include statements which "subject a person to public hatred, ridicule or contempt." Def. Br. at 11 (citing *Green v. Mason*, 504 F.Supp. 3d 813 (S.D. Ohio 2020)). His argument on this point, however, amounts to protesting "I disagree" that his defamatory statements exposed her to such public hatred, ridicule, or contempt. Fred claims his statements were "entirely benign." Def. Br. at 11. But the Complaint makes clear that significant hatred, ridicule, and contempt were directed at Amy in the wake of the Article's publication. Compl. ¶¶ 142–48.

As proof that Fred's statements did not subject Amy to the negative attention she alleges, Fred argues that all of the negativity recounted in the Complaint is directed at Amy based on "how her actions affected Eric's relationship *with his children*." Def. Br. at 11 (emphasis in original). There are numerous issues with Fred's characterization. Initially, the Complaint does not purport

13

to quote every negative comment made about Amy in the wake of the Article's publication. But even among those quotes, he is incorrect that the vitriol directed at Amy was exclusively based on her impact on Eric's relationship with his children. She was described as being "an abusive manipulative controller," "the cause for [Eric's] isolation," "the problem," and a "vindictive, hateful person." Compl. ¶ 144. One reader suggested broadly that "Amy positioned herself so she could basically run the show" and that she "tainted how everyone saw Eric." *Id.* ¶ 145. Likewise, she was lambasted as having "not come off as a good person." *Id.* ¶ 146. None of this commentary is about Eric's relationship with the Stepchildren Defendants. It is clear that the subject of public ridicule was Amy. These invectives align with how Fred described Amy as manipulating Eric.

But Fred's argument that the public contempt was aimed at Amy's purported interference with Eric's relationship with his children is misguided for another reason: Fred's defamatory statements *were* aimed at castigating Amy for separating Eric from his children. Fred blamed Amy for Eric's lawsuits against his children,[7] Compl. ¶ 101, claimed Amy manipulated Eric into turning on his family, *id.* ¶ 103, and accused her of convincing Eric that his entire family was engaged in a conspiracy against him, *id.* ¶ 108. Thus, Fred's concession that Amy faced ridicule, hatred, and contempt based on the way the Article presented her as affecting Eric's relationship with his children constitutes an admission that his statements constitute defamation *per se*, as his statements ostensibly contributed to that narrative.

This section of Fred's brief includes a tangent describing on how Amy claims that Fred violated a non-disparagement clause. *See* Def. Br. at 12. Fred attempts to parse the relevant provision as limited because, he claims, the non-disparagement clause only covers remarks which

---

[7] Pointedly, the Stepchildren Defendants (Eric's own children) were the ones who commenced litigation against Eric.

"relate[] to th[e] former Lawsuit or the circumstances surrounding this Lawsuit or this Release." *Id.* Once again, Fred ignores the content of the Actionable Statements attributable to him. Two of those statements (2 and 11) are explicitly about Amy's purported role in the bringing of the former lawsuit against Fred. Thus, there is no reason the non-disparagement clause would not apply to those Actionable Statements.

### E.    Fred's Defamation by Omission Argument is Not Applicable as Argued to the Actionable Statements Attributed to Him

Fred "adopts" the Rolling Stone Defendants' argument regarding the purported unavailability of a defamation by omission theory of liability. Def. Br. at 13. But he fails to actually explain how that theory is applicable to any of the Actionable Statements attributed to him. In support of his argument, Fred merely parrots an example which the Rolling Stone Defendants already presented. However, this "defamation by omission" argument fails since it is apparent from the Complaint that Amy's theory of liability regarding Fred's Actionable Statements is not that he "left unanswered" any questions about Eric's estrangement; it is that he, *inter alia*, explicitly attributed that estrangement to Amy. Any other argument Fred could have brought regarding purported defamation by omission has not been identified by Fred in his moving brief and, as such, Amy cannot respond to it.

Regardless, as discussed in Amy's opposition to the Rolling Stone Defendants' motion to dismiss, defamation by omission is a perfectly valid theory with which to plead a defamation claim. "A plaintiff can bring a claim for defamation when discrete facts . . . are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 528 (6th Cir. 2007) (quoting *Green v. CBS Inc.*, 286 F.3d 281, 284 (5th Cir. 2002)) (brackets omitted).

15

In fact, multiple cases in Ohio state and federal courts have substantively considered a plaintiff's claim of defamation by omission. *See, e.g.*, *Labban v. Mahon*, No. 21-3091, 2021 U.S. App. LEXIS 28978 (6th Cir. Sep. 23, 2021) (explicitly considering a defamation by omission argument in a case appealed from the Northern District of Ohio and finding it unavailing on the merits); *Dickinson v. Toledo Pub. Sch. Bd. of Educ.*, No. G-4801-CI 2014-4424, 2016 Ohio Misc. LEXIS 2889 (Ct. Com. Pl. Feb. 8, 2016) ("Plaintiff next argues that Spieldenner's statement was false by omission . . . . Plaintiffs [sic] argument on this front is again unpersuasive. Spieldenner accurately stated that Plaintiff had been investigated multiple times."). The opinions addressing the merits of a "defamation by omission" theory confirm that the legal argument is, at minimum, passable with appropriate factual support. Although these courts did not ultimately uphold the claims at issue, it is important to acknowledge that they did not dismiss the claims for improper legal theories, but instead on the underlying merits. And so, defamation by omission constitutes a legitimate claim of defamation.

### F.    Plaintiff Has Properly Pled a False Light Claim

To state a claim for false light, a plaintiff must allege that a defendant has "reveal[ed] intimate and personal, but false, details of plaintiff's private life." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1055 (2007). More specifically, to plead a false light claim distinct from defamation, a plaintiff must allege that the "false light in which [she] was placed would be highly offensive to a reasonable person." *Id.* at 1054. An additional element is that the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter." *Id.*

In moving to dismiss this count, Fred offers three separate arguments. However, each of these arguments are recycled from earlier in his Motion and, as discussed *supra*, are not meritorious, particularly at this stage of the litigation.

16

Initially, Fred argues that a false light claim is not available because "Fred's statements were substantially true and expressed his opinions which are not verifiable." Def. Br. at 14. But Fred cannot rely on his *ipse dixit* that the Actionable Statements are true at this stage of the litigation unless the truth of those statements is apparent on the face of the Complaint. *See Spartan Chem. Co.*, 2018 U.S. Dist. LEXIS 199642, at *6 (recognizing a movant on a motion to dismiss based on a defense of truth must show "how the allegations in the complaint show the statements are true"). Fred has done nothing to show how Amy's allegations establish the truth of the Actionable Statements attributable to him, and as such his protestations regarding the truth of his statements are irrelevant on this Motion. Likewise, as described *supra*, Fred's claims that his statements are non-actionable opinions are based on a misrepresentation of the Actionable Statements, which clearly claim (false) facts regarding Amy's conduct.

Next, Fred claims that he cannot be held liable for a claim of false light because his "statements would not be construed by a reasonable person to be highly offensive." Def. Br. at 14. Fred defends himself by noting his "statements don't accuse Amy of criminal activity or of spreading a contagious disease," as if that is the barometer for a person to be highly offended. *Id.* It hardly needs to be said that an *actually* reasonable person would disagree. Fred accused Amy of manipulating her deceased husband into suing and cutting off relationships with his family members so that she could control him. In the wake of Fred's accusations, Amy faced public vitriol. Moreover, Fred's statements centered around the details of Plaintiff's interfamilial relationships, and they clearly contain "intimate and personal, but false, details of plaintiff's private life." *Welling*, 866 N.E.2d at 1055. Fred may have unusually thick skin, but a reasonable person would certainly take offense to false accusations of such conduct. Nevertheless, "whether that false light would be highly offensive to a reasonable person, [is a] question[] of fact for the jury." *Mahdy*

*v. Mason City Sch. Dist.*, 2018 U.S. Dist. LEXIS 42707 at \*28 (S.D. Ohio Mar. 15, 2018). And so, this argument, like most of Fred's Motion, should not be considered at this stage.

Finally, Fred takes issue with the malice requirement regarding his knowledge of the falsity of his statements, notwithstanding the fact that negligence is the appropriate standard for private plaintiffs in defamation cases. *See* Def. Br. at 14–15. Of course, he is well aware of the facts underlying his estrangement from his brother, and the facts and circumstances surrounding the former litigation between them. Fred offered statements on both topics to the Rolling Stone Defendants (despite the fact that he was not allowed to under the subject settlement agreement and non-disparagement clause). Because he cannot challenge the truth of his statements on this Motion, he likewise cannot challenge the assertion that he knew his statements were false—if he were stealing from his brother, he certainly knew about it.

Thus, all of Fred's recycled arguments in favor of dismissal of Amy's false light claim are unavailing. Accordingly, dismissal of the claim would be improper.

## V.     Conclusion

Fred would have this Court believe that Amy is suing him for expressing opinions. He asks this Court to resolve questions of fact and to draw conclusions about a "reasonable person's" response to his statements, before he has even filed an answer. Further, Fred's Motion is supported only by his contentions that any statements he made were the unassailable truth and that he should not be sued for making them.

But, as discussed *supra*, this Court cannot even properly consider most of the arguments and "facts" Fred has put forward on this Motion, and his other arguments are belied by the allegations set forth in Amy's Complaint and the Article. At a minimum, Amy's Complaint plausibly alleges her claims against Fred. For the foregoing reasons, Plaintiff's complaint should not be dismissed.

18

Date: May 12, 2026

Respectfully submitted,

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik
Meredith R. Lloyd (0102173)
Taylor Dykema, PLLC
914 E. 25th Street
Houston, TX 77009
(516) 526-0341
edward@taylordykema.com
meredith@taylordykema.com

*Counsel for Plaintiff Amy Carmen*

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2026, a copy of the foregoing Plaintiff Amy Carmen's Memorandum of Law in Opposition to Defendant Fred N. Carmen's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all counsel of record and to Fred Carmen, *pro se*, by operation of the Court's electronic filing system.

I further certify that a copy of the foregoing was sent to Fred Carmen via email on May 12, 2026.

 /s/ Meredith R. Lloyd
Meredith R. Lloyd (0102173)

*Counsel for Plaintiff Amy Carmen*

20

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT

In accordance with Loc.R. 7.1(f), the undersigned counsel hereby certifies that this action has been assigned to the standard track and that the foregoing Memorandum complies with the applicable 20 page limit.

 /s/ Meredith R. Lloyd
Meredith R. Lloyd (0102173)

*Counsel for Plaintiff Amy Carmen*
